UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 2:17-cr-21-DBH |
| | ) | |
| WILLIE RICHARD MINOR, | ) | |
| | ) | |
| Defendant | ) | |

**PROCEDURAL ORDER**

Following the jury verdict in this case, one of the Assistant United States Attorneys (AUSAs) reported to the Court and defense counsel that she learned after the verdict that one of the jurors told a friend, before the trial began, words to the effect that she had been selected as a juror in a case that involved an African American man who had a domestic violence conviction and a gun. All of that information was accurate and had been made available at *voir dire*. At that point, the juror's identity (including, for example, whether she had deliberated or was an alternate) was unknown, and I conducted a telephone conference with counsel to discuss what, if anything, should be done. I asked the AUSA to ascertain the juror's identity from her source. During our telephone conference, defense counsel requested that I ask the juror (who has now been identified) these questions:

> whether the juror had discussed the case with anyone prior to jury deliberations;

whether she had formed an opinion on the defendant's guilt prior to jury deliberations;

whether she expressed an opinion to any person on the defendant's guilt before deliberations;

and that I do so by telephone due to the ongoing COVID-19 pandemic.

After the telephone conference of counsel, I have done some research into the Rules of Evidence and Supreme Court caselaw.

The Supreme Court reads Federal Rule of Evidence 606(b) as precluding inquiry of a juror, after a verdict, into anything that may have affected jury deliberations except "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." Peña-Rodriguez v. Colorado, 137 S. Ct. 855, 869 (2017). The Court elaborated:

> Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

Id.

At the same time, the Supreme Court noted that after a verdict, "evidence of misconduct other than juror testimony can be used to attempt to impeach the

verdict." Id. at 866 (citing <u>Tanner v. United States</u>, 483 U.S. 107, 127 (1987) and <u>Warger v. Shauers</u>, 574 U.S. 40, 51 (2014)).

At this stage, I conclude that under <u>Peña-Rodriguez</u> I do not have justification, from the information the AUSA has presented, to question the juror (*i.e.*, no clear statement that this juror relied on racial stereotypes or animus to convict). Although I have no reason to question that the AUSA has presented that information as accurately as possible, I leave to defense counsel whether he believes he should investigate that information further, given the Supreme Court cases' references to misconduct that can be shown using nonjuror evidence.

Counsel shall report back to the Court by April 13, 2020, what, if any, further steps, should be taken.

**SO ORDERED.**

**DATED THIS 3RD DAY OF APRIL, 2020**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**